OPINION OF THE COURT
Margaret Taylor, J.
This is a holdover proceeding brought by the petitioner landlord (petitioner) seeking possession of an apartment based upon the allegation that this apartment is not the primary residence of respondent tenant (respondent).
In June of 1980, respondent entered into a two-year lease, expiring in September of 1982. At the time, the building was not owned by the petitioner but by a prior landlord. In May of 1982, the prior landlord notified the Conciliation and Appeals Board (CAB) of its plans to remove the building from the housing market by demolishing it and, therefore, requested permission not to renew respondent’s lease upon its expiration in September of *433 1982. Respondent was never offered a renewal lease, either by the prior owner or by petitioner, which acquired title to the building in November of 1983. In December of 1983, petitioner notified the CAB that it did not wish to pursue the demolition of the building planned by the prior owner and that it wishes to withdraw the proceeding pending before the CAB.
In June of 1984, petitioner brought this proceeding seeking possession of respondent’s apartment because of respondent’s alleged failure to maintain the apartment as his primary residence. Respondent has moved for summary judgment to dismiss the petition on a variety of grounds. Without considering each of the grounds for dismissal put forward by respondent, this court finds merit in the assertion that respondent had a right to a renewal lease upon the expiration of his lease in September of 1982 and that the failure of the prior owner to offer respondent a renewal lease within 120-150 days before the expiration of the lease precludes the landlord from refusing to offer a renewal at this time under subdivision E of section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code). Thus, respondent’s motion for summary judgment dismissing the petition is granted.
Petitioner’s argument may be summarized as follows: The apartment is not covered by the Rent Stabilization Law of 1969 (Administrative Code of City of New York, § YY51-1.0 et seq.) by reason of a vacancy which occurred after June 30, 1971. Respondent bears the burden of proving that he uses the apartment as his primary residence and, having failed to establish this, the apartment is not subject to the Rent Stabilization Code under the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4). Consequently, the landlord is under no obligation to offer the tenant a renewal lease and no such obligation existed during the 120-150-day “window” period under section 60 of the Rent Stabilization Code (Administrative Code, § YY51-6.0).
Under section 60 of the Rent Stabilization Code, a tenant has the right to a renewal lease which has been held to vest at the end of the 120-150-day period prior to the expiration *434 of the tenant’s lease (See Elwick, Ltd. v Howard, NYLJ, May 16, 1984, p 6, col 2; Bolotin v Ameri, NYLJ, Feb. 8, 1984, p 11, col 1). As noted above, the previous owner of the building did not offer a renewal lease during the 120-150-day window period specified by the Rent Stabilization Code. No allegation was made at that time that respondent was not maintaining this apartment as his primary residence. Instead, the prior owner notified respondent of its intention not to renew the lease because of alleged plans to demolish the building. While the prior owner may or may not have ultimately prevailed on these grounds under subdivision D of section 54 of the Rent Stabilization Code, the fact is that petitioner discontinued this action before the CAB in December of 1983, over a year after respondent’s lease had expired and 18 months after respondent was entitled to the offer of a renewal lease.
Petitioner acquired the building subject to those rights and protections enjoyed by the building’s tenants at the time of acquisition, including those rights and protections which resulted from the prior owner’s dealings with the CAB. (See Elwick, Ltd. v Howard, supra; Friedman v Babic, 118 Misc 2d 565.) When petitioner discontinued the proceeding before the CAB, the only available grounds for refusing to renew respondent’s lease were waived. The issue of nonprimary residence may only be raised during the 120-150-day period prior to the expiration of a tenant’s lease. In the present case, this issue was never raised during that time. To allow petitioner to raise it now could create the untenable situation whereby the courts would be required to repeatedly adjudicate nonrenewals of a lease for the same apartment. Landlords could refuse to renew a lease under one of the grounds allowed by section 54 of the Rent Stabilization Code and, if unsuccessful, raise a second ground, litigate upon that ground, and if again unsuccessful, continue the same process under other grounds. Clearly, this was not the intent of the Rent Stabilization Code. By requiring a landlord to offer a renewal lease during a specified one-month period unless the landlord is able to raise substantial specific grounds for nonrenewal at that time, the Code promoted a more orderly landlord-tenant relationship as well as administrative and judicial economy.
*435 Petitioner’s contention that respondent’s apartment is not covered by the Emergency Tenant Protection Act is, therefore, clearly without merit since the issue of nonprimary residence was not raised at the time respondent’s right to a renewal lease vested. Petitioner may not now raise the issue of nonprimary residence which was waived during the 120-150-day window period. Thus, petitioner must now offer respondent a renewal lease and respondent is entitled to 60 days to determine whether or not to accept such lease, which will commence upon respondent’s acceptance.